5001329486001

## Mercedes-Benz Financial Services

**Note and Security Agreement (Multi-State)**

Date: 10/15/2019
Quote #: 971758
MBFF2508A

| BORROWER: | CO-BORROWER |
|---|---|
| FAST FLOW PLUMBING LLC<br>1095 Majaun Rd<br>Lexington  KY  405111185 | |

**LENDER:** Mercedes-Benz Financial Services USA LLC (14372 Heritage Parkway, Fort Worth, Texas 76177), *and its successors, transferees and assigns.*

I (meaning individually, collectively, and interchangeably, all Borrowers named above, jointly and severally) have entered into this Note and Security Agreement ("Note") with Lender in the original principal amount of $44,116.86 ("Loan Amount") to borrow funds to be used to purchase the following described equipment ("Equipment"). I acknowledge that I have accepted delivery of the Equipment in good order without reservation of rights and without implied warranty as to condition, merchantability, and suitability for any purpose. I further acknowledge and certify that I have entered into this Note with Lender, and I intend to use the purchased Equipment, primarily for business or commercial purposes, and not for personal, family, household or agricultural purposes.

**DESCRIPTION OF EQUIPMENT:**   List Payoff to:

| New/Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price |
|---|---|---|---|---|---|---|
| N | MERCEDES | SPRINTER | WD4PF1CD1KP035860 | M2CA76 | 2019 | $48,281.00 |

**PROMISE TO PAY:** I promise to pay to the order of Lender the Loan Amount together with daily simple interest thereon at the rate set forth on page 2 of this Note from the date of this Note until all of my obligations under this Note are fully paid and satisfied.

**PAYMENT TERMS:** My loan is payable in 72 payments of $846.05 each, commencing on 11/14/2019 and continuing on the 14th day of each successive month thereafter, which includes a final payment of the then unpaid principal and interest in the estimated amount of $846.05 due on 10/14/2025 (except as otherwise stated on the Payment Schedule Addendum attached hereto and made a part hereof). The amount of my final payment may vary depending upon when Lender receives my periodic loan payments, and will include the unpaid principal balance, interest and any other amounts owed as of the final payment due date.

**SECURITY AGREEMENT:** In order to secure the prompt and punctual payment and satisfaction of my Indebtedness (as defined herein), I am granting Lender a security interest in the Equipment, and in all accessions, replacements and additions to the Equipment, and in all leases and chattel paper of the Equipment, and in all lease payments, rentals, and rights thereto, and in all proceeds derived from the Equipment, including insurance proceeds and refunds of insurance premiums. If Lender permits me to allow others to use or lease the Equipment, I agree to stamp any agreement between me and my lessee with language approved by Lender and to provide and update Lender with all current contact information of user or lessee. I also agree that, to the extent permitted by applicable law, collateral securing other loans, credit sales and leases that I may have with Lender or any affiliate of Lender, whether now or in the future, additionally will secure my Indebtedness under this Note. The Equipment, all leases and chattel paper of the Equipment, all lease payments, rentals, and rights thereto, proceeds, and my additional collateral securing other loans, credit sales, and leases with Lender or any affiliate of Lender, are individually, collectively and interchangeably referred to under this Note as my "Collateral." For purposes of this Note, the term "Indebtedness" means: (1) my indebtedness under this Note for payment of principal, interest, late charges, returned check fees, liquidated damages and any other amounts due hereunder; (2) to the extent permitted by applicable law, my indebtedness under any other loans, leases or other obligations that I may now and in the future owe to Lender or any affiliate of Lender, other than loans, leases or other obligations secured by vehicles or other goods which I represent on the loan, lease or other obligation documents are used or to be used by me primarily for personal, family or household purposes; (3) all additional funds that Lender or any affiliate of Lender may advance on my behalf as provided in this Note; and (4) Lender's costs and expenses incurred in enforcing Lender's rights under this Note, and in protecting and preserving the Collateral, including, to the extent permitted by applicable law, reimbursement of Lender's reasonable attorney's fees, court costs, and collection expenses.

**ACKNOWLEDGEMENT:** I (we) have read, accepted and acknowledge receipt of a completed copy of the Note, including the Terms and Conditions on the reverse side or following pages which are made a part hereof and I (we) agree to all its terms.

| Borrower: FAST FLOW PLUMBING LLC | Co-Borrower: |
|---|---|
| Signature: X *[signature]* | Signature: X |
| Title: MEMBER | Title: |

MBFF2508 (06/01/2011)

**EXHIBIT A**

**Mercedes Benz Financial Services**

**Note and Security Agreement (Multi-State)**

Date: 10/15/2019
Quote No.: 971758
MBFF2508A

1. **Interest Rate:** Daily simple interest will be assessed on the Loan Amount at the following rate from the date of this Note until all of my obligations under this Note are fully paid and satisfied: 11.29% per annum. Interest will be computed on the basis of the actual number of days elapsed in a 365 day year, or a 366 day year if a leap year.
2. **Late Payment/Additional Charges:** If I fail to make any payment within ten (10) days of the due date, I agree to pay Lender a late payment fee in an amount equal to 5% of the unpaid amount, or such lesser amount as may be limited by law. In addition, I agree to pay a charge of $30, or such lesser amount as may be limited by law, for each check, draft or similar instrument presented to Lender that is returned or dishonored for any reason.
3. **Prepayment:** I may prepay the then unpaid principal balance, plus accrued interest and other amounts then owing under this Note, in full or in part at any time without penalty.
4. **Perfection of Security Interest:** I authorize Lender to perfect its security interest in the Collateral. I agree to reimburse Lender for all filing costs and perfection expenses, as well as for all costs of amending, continuing and terminating such filings.
5. **Covenants:** I agree: (1) not to sell, lease, transfer or assign the Collateral without Lender's prior written consent; (2) not to allow any other security interest or lien to be placed on or to attach to the Collateral; (3) not to make any material changes or alterations to the Equipment without Lender's prior written consent (including replacements, additions, accessories or substitutions; (4) not to remove the Equipment from the state in which I reside or have my principal offices, other than in the ordinary course of business, for a period in excess of sixty (60) consecutive days, without first obtaining Lender's prior written consent; (5) not to re-title the Equipment in another state without first notifying Lender; and (6) if I am a business entity, not to change my name or form or state of organization without first notifying Lender at least thirty (30) days in advance of such change. I further agree: (a) that anything that may be attached to the Equipment will become an accession to the Equipment, and will become part of the Collateral; (b) to make all necessary repairs to, and not to abandon the Equipment; (c) to abide by all laws and rules and regulations with respect to the use and operation of the Equipment, and to obtain all necessary permits and licenses in those jurisdictions where required; (d) to pay all taxes and assessments levied against the Equipment and to furnish Lender with proof of such payments; and (e) to permit Lender to inspect the Equipment at reasonable times.
6. **Insurance:** I agree to keep the Equipment continuously insured by an insurance company and with deductible approved by Lender, with comprehensive and collision coverage, and with coverage for any other hazards Lender may specify from time to time for coverage amounts not less than the actual cash value of the Equipment or the outstanding principal balance of my Indebtedness. I may purchase this insurance from any insurance company reasonably acceptable to Lender. I agree to provide Lender with written proof of a paid insurance policy, and subsequent renewals, showing Lender as a lender's loss payee and additional insured under my insurance policy, which policy will require at least thirty (30) days advance written notice to Lender before it may lapse, be reduced, canceled or terminated for any reason. I agree that all insurance proceeds, including any premium refunds, are payable first to Lender to the extent of its interest in the Equipment, and I assign my interest in same to Lender. Lender may apply any insurance proceeds and returned premiums received to the unpaid balance of my Indebtedness. Should I fail to purchase and maintain adequate insurance on the Equipment, as determined by Lender (at Lender's sole discretion), then Lender may (at Lender's sole option, and without any responsibility or liability to do so) purchase such insurance as Lender deems necessary to protect its interest. The amount advanced by Lender for said insurance shall be immediately due and repaid to Lender, together with interest with a rate up to 18% per annum, as limited by law, from the date of such advance. I authorize Lender to release to third parties any information necessary to facilitate insurance and tax monitoring and insurance placement. If there is a total loss on any item of Equipment, I agree to immediately pay to Lender all insurance proceeds and amounts needed to retire the unpaid principal balance plus accrued interest and any other allocable amounts then due and owing on such item of Equipment. All insurance policies financed under this Note, unless a shorter period is specified in the policy, end upon the original due date of the last payment due under this Note. If I am due any insurance refund, I will seek same from my insurance company. Lender does not require me to have credit life insurance.
THE INSURANCE REQUIRED UNDER THIS NOTE IS NOT PUBLIC LIABILITY INSURANCE AND DOES NOT COVER LIABILITY FOR INJURY TO ANY PERSONS OR DAMAGES TO PROPERTY.
7. **Default and Acceleration:** Lender has the right at its sole option to insist on immediate payment in full of all Indebtedness that I may owe to Lender upon the occurrence of any one or more of the following events, in each case to the extent permitted by applicable law: (1) if I fail to make any payment under this Note when due; or (2) if I am in default under any other provision of this Note; or (3) if I am in default under any other loan, lease, extension of credit, or obligation that I may then owe to Lender or any affiliate of Lender other than loans, leases, extensions of credit or obligations secured by vehicles or other goods which I represent on the loan, lease or other credit or obligation documents are used or to be used by me primarily for personal, family or household purposes; or (4) if I am other than an individual and I, without Lender's consent, (a) make a significant change in my management, ownership or control; or (b) merge, transfer, acquire or consolidate with any other entity; or (5) if I should become insolvent, or the subject of a bankruptcy or other relief from creditors; or (6) if any of the Equipment is seized under process of law; or (7) if any guaranty of my obligations under this Note is withdrawn or becomes unenforceable for any reason; or (8) if Lender reasonably believes itself to be insecure in the repayment of this Note. After default and acceleration, I agree to continue to pay Lender interest on the then unpaid balance of my Indebtedness at the rate of eighteen (18%) percent per annum, or such lesser rate as may be limited by law.
8. **Default Remedies:** Should I default under this Note, and Lender elects to accelerate payment of my Indebtedness, Lender may exercise all of the rights and remedies available to secured creditors generally under the Uniform Commercial Code. I agree to turn over and deliver the Collateral to Lender at my expense, at the time and at the location Lender may demand of me. Alternatively, to the extent permitted by applicable law, Lender may enter any premises or other place where the Collateral may be located, and take possession of the Collateral, and all other property then located on or in the Collateral, provided that Lender is able to do so without breach of the peace. To the extent permitted by applicable law, Lender may then sell the Collateral without warranty at public or private sale, and apply the sale proceeds to the satisfaction of my Indebtedness. Unless otherwise required by applicable law, Lender has no obligation to clean-up, repair, or prepare the Collateral for sale. I hereby agree that Lender may advertise and sell repossessed Collateral through www.usedtruckinventory.com or other internet websites through which equipment or motor vehicles similar to the Collateral is sold and that such sale shall be deemed a commercially reasonable disposition of the Collateral. Any requirement that Lender notify me of the sale or other disposition of the Collateral will be satisfied if Lender sends me a written communication at least ten (10) days in advance of the date on which a public sale is scheduled, or within ten (10) days in advance of the time after which a private sale or other disposition may take place. Furthermore, to the extent permitted by applicable law, upon default Lender may cancel any insurance financed under this Note and apply the refunded premium to my Indebtedness and I authorize Lender to notify anyone using equipment to pay Lender directly for my Indebtedness.
9. **Waivers:** All Borrowers and Guarantors waive presentment, notice, and demand for payment, and agree that our liability under this Note shall be joint and several with each other. We further agree that discharge or release of any party, or Collateral, or any extension of time for payment, or any delay in enforcing Lender's rights, will not cause Lender to lose any of its rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, I EXPRESSLY WAIVE ANY RIGHT TO A JURY TRIAL IN ANY DISPUTE REGARDING OR ARISING OUT OF THIS NOTE, THE SALE OF THE EQUIPMENT, OR MY RELATIONSHIP WITH LENDER OR EQUIPMENT SELLER.
10. **Collection/Attorney's Fees and Expenses:** If Lender sues me, or if Lender refers my loan to an attorney for collection, to the extent permitted by applicable law, I agree to pay Lender reasonable attorney's fees actually incurred. I further agree to reimburse Lender for its court costs and reasonable collection expenses incurred in enforcing Lender's rights under this Note.
11. **Savings Clause:** It is Lender's intent to fully comply with all laws and regulations limiting imposition and collection of interest and other fees and charges in connection with my loan. Should I be called upon, or should I ever pay interest or other fees and charges to Lender in excess of the amount(s) and rate(s) permitted, I agree that Lender may cure such violation by crediting any excess amount that I have paid against my then outstanding principal balance under this Note.
12. **No Agency Relationship; No Right to Assert Claims and Defenses:** I fully understand and unconditionally agree that neither the Equipment manufacturer and distributor, nor their employees, are Lender's partners, agents, or representatives, and have no right to commit, bind or obligate Lender in any way. I further understand and unconditionally agree that, except for the limited purpose of assisting in the completion of this Note, neither the Equipment seller nor its employees are Lender's partners, agents, or representatives, and have no right to commit, bind or obligate Lender in any way. TO THE EXTENT PERMITTED BY APPLICABLE LAW, MY OBLIGATIONS TO LENDER UNDER THIS NOTE ARE IRREVOCABLE, ABSOLUTE, AND UNCONDITIONAL AND ARE TO BE PAID OR PERFORMED IN ACCORDANCE WITH THEIR TERMS WITH NO RIGHT OF OFFSET, COUNTERCLAIM OR DEFENSE AGAINST LENDER OR ANY ASSIGNEE, INCLUDING BUT NOT LIMITED TO ANY RIGHT OF OFFSET, COUNTERCLAIM OR DEFENSE ARISING FROM ANY EXPRESS OR IMPLIED WARRANTY RELATING TO THE EQUIPMENT INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.
13. **Representations and Warranties:** I represent and warrant to Lender that: (1) my correct legal name and state of residence or organization are listed on page 1 of this Note, and I am properly authorized, licensed and in good standing to conduct business in each applicable jurisdiction; (2) none of the preprinted provisions of this Note have been altered, modified, or stricken by me or by anyone else; (3) I or my authorized representative properly executed this Note in my name and my signature on this Note, or that of my authorized representative, is genuine; and (4) I have and intend to license, title, and register the Equipment in the proper state or jurisdiction.
14. **Power of Attorney:** To the extent permitted by law, I hereby appoint Lender as my attorney-in-fact. My grant of this power of attorney is coupled with an interest and is irrevocable until all obligations I owe under this Note are paid in full. As my attorney-in-fact, Lender can, in my name or Lender's name: (a) sign on my behalf all certificates of ownership, registration cards, financing statements, applications, affidavits or any other documents required to register and properly perfect Lender's security interest in the Collateral; (b) transfer my entire interest in the Collateral as part of a repossession and sale; (c) act on my behalf in insurance matters relating to the Collateral, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf and cancel any credit life, credit disability, guaranteed automotive protection coverage, extended warranty or other optional insurance financed under this Note, and apply the refunded premium or cost to my outstanding balance if I am in default; and (d) make claims on my behalf under any such insurance policies related to the Collateral.
15. **Governing Law:** This Note shall be deemed received and accepted by Lender in Fort Worth, Texas on the date of funding. Furthermore this Note shall be governed and construed under the laws of the State of the Borrower's address at the time of execution of this Note, as indicated on Page 1, irrespective of the conflict of laws principles of that state.
16. **Miscellaneous:** In this Note, the words "I", "me", "my", "we", "us" and "our" individually, collectively and interchangeably mean each person or entity signing this Note as a Borrower, Co-Borrower or Guarantor, their successors and assigns, and all other persons that may be or become obligated under this Note. All schedules executed in connection with this Note are part of this Note. This Note and any such schedules constitute the entire Note between the parties. No modification or amendment of this Note shall be effective unless in writing signed by all parties. All provisions of this Note that are prohibited by applicable law shall be ineffective solely to the extent of such prohibition without invalidating the other provisions of this Note. Any waiver of Lender's rights and remedies under this Note shall be effective only if specifically agreed by Lender in writing. To the extent permitted by law, I give Lender permission to monitor and record any telephone conversation between Lender and me, including my representatives, service providers and agents.
17. **ACH Authorization.** From time to time I may contact Lender by telephone or otherwise to initiate single or reoccurring electronic debit entries to a specified business bank account held at the financial institution I designate through the Automated Clearing House (ACH) network. I hereby authorize Lender to initiate all such debit entries in the amount of my monthly payment or payments under the Note, plus all other amounts due at the time not exceeding $100.00 (or in such other amount as I specify from time to time) and agree to be bound by the rules and regulations of the National Automated Clearing House Association, as they may change from time to time, applicable thereto.
18. **Authorization to Share Information:** Lender may collect non-public information from Borrower and any Guarantor which may consist of information on credit applications or other forms, information regarding transactions with Lender, affiliates or others and information that Lender receives from credit reporting agencies and other outside sources during the time period that a line of credit is in effect or that any balance is due to Lender under any lease or loan agreement ("Information"). All Borrowers and Guarantors agree that Lender may disclose any of the Information to any affiliate, assigns or agents of Lender.

MBFF2508 (06/01/2011)

**Mercedes-Benz Financial Services**          **Dealer Agreement – Direct Loans**

LOAN AGREEMENT DATE: 10/15/2019
BORROWER: FAST FLOW PLUMBING LLC

| 1095 Majaun Rd | Lexington | | KY | 405111185 |
|---|---|---|---|---|
| (Street No.) | (City) | (County) | (State) | (Zip) |

Description of Equipment: *See Property Schedule if 4 or more units*

| New/Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price | Titling Source |
|---|---|---|---|---|---|---|---|
| N | MERCEDES | SPRINTER | WD4PF1CD1KP035860 | M2CA76 | 2019 | $48,281.00 | DEALER |
| | | | | | | | |
| | | | | | | | |

In consideration of and for Mercedes-Benz Financial Services USA LLC, and its successors, transferees and assigns ("Lender") making a direct loan (the "Loan") to the Borrower named above to purchase the described Equipment, the undersigned Dealer agrees as follows:

1. **Incorporation of Certain Provisions of Dealer's Retail Installment Contract and Lease Program Agreement by Reference.** By signing below, Dealer accepts the Loan Agreement subject to the terms and conditions of the Retail Installment Contract and Lease Program Agreement with or assigned to Mercedes-Benz Financial Services USA LLC and Dealer.

2. **Dealer's Refund Obligations.** In the event that the Borrower prepays the Loan in full prior to maturity, or if Lender accelerates payment of the Loan as a result of the Borrower's default, Dealer agrees to refund and to pay to Lender, immediately on demand, the then unearned amount of any credit life, credit disability and property insurance premiums paid with the proceeds from the Note that are required by law or by agreement to be rebated or refunded by Dealer to Borrower. Dealer agrees that Lender may set-off Dealer's refund obligations against any reserve account or accounts that Dealer may maintain with Lender, and/or against any credits or amounts that Lender may owe to Dealer either as a result of the funding of a separate loan to another borrower, or for any other reason.

3. **Dealer is Not Lender's Agent.** Neither this Agreement, nor any action taken by Dealer with respect to the Note, except for the limited purpose of assisting in the completion of the Note, shall be deemed to create a principal-agency relationship between Dealer and Lender, or to authorize Dealer, or Dealer's employees, to act as Lender's representative.

4. **Miscellaneous.** This Agreement is subject to the substantive laws of the State of Texas for all purposes irrespective of the conflict of laws principles of that state. This Agreement is binding upon the parties hereto and their respective successors and assigns. Should any provision of this Agreement be deemed to be unenforceable, that provision shall be deemed as stricken, with all other provisions of this Agreement remaining in full force and effect. Dealer agrees to pay Lender's reasonable attorney's fees incurred in enforcing Lender's rights against Dealer under this Agreement. BOTH DEALER AND LENDER WAIVE THE RIGHT TO A TRIAL BY JURY AS TO ALL MATTERS ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT.

Dealer has executed this Agreement as of this 15th day of October, 2019.

Dealer Name: LAGREW MOTORS, INC.
By (signature): X _[signature]_
Title: FINANCE MANAGER

Dealer Agreement – MBFF0041 (06/01/2011)

5002022137001

## Mercedes-Benz Financial Services

### Note and Security Agreement (Multi-State)

Date: 08/18/2021
Quote #: 244811
MBFF2508 A

**BORROWER:**
FAST FLOW PLUMBING, LLC
1095 Majaun Rd
Lexington    KY    405111185    Fayette

**CO-BORROWER**
Address
City    State    Zip Code

**LENDER:** Mercedes-Benz Financial Services USA LLC (14372 Heritage Parkway, Fort Worth, Texas 76177), *and its successors, transferees and assigns.*

I (meaning individually, collectively, and interchangeably, all Borrowers named above, jointly and severally) have entered into this Note and Security Agreement ("Note") with Lender in the original principal amount of $43,032.94 ("Loan Amount") to borrow funds to be used to purchase the following described equipment ("Equipment"). I acknowledge that I have accepted delivery of the Equipment in good order without reservation of rights and without implied warranty as to condition, merchantability, and suitability for any purpose. I further acknowledge and certify that I have entered into this Note with Lender, and I intend to use the purchased Equipment, primarily for business or commercial purposes, and not for personal, family, household or agricultural purposes.

**DESCRIPTION OF EQUIPMENT:**

List Payoff to: n/a

| New/Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price |
|---|---|---|---|---|---|---|
| N | MERCEDES BENZ | SPRINTER | W1Y4ECHYXMT060270 | VAN | 2021 | $44,899.00 |

**PROMISE TO PAY:** I promise to pay to the order of Lender the Loan Amount together with daily simple interest thereon at the rate set forth on page 2 of this Note from the date of this Note until all of my obligations under this Note are fully paid and satisfied.

**PAYMENT TERMS:** My loan is payable in 60 payments of $880.44 each, commencing on 09/17/2021 and continuing on the 17th day of each successive month thereafter, which includes a final payment of the then unpaid principal and interest in the estimated amount of $880.44 due on 08/17/2026 (except as otherwise stated on the Payment Schedule Addendum attached hereto and made a part hereof). The amount of my final payment may vary depending upon when Lender receives my periodic loan payments, and will include the unpaid principal balance, interest and any other amounts owed as of the final payment due date.

**SECURITY AGREEMENT:** In order to secure the prompt and punctual payment and satisfaction of my Indebtedness (as defined herein), I am granting Lender a security interest in the Equipment, and in all accessions, replacements and additions to the Equipment, and in all leases and chattel paper of the Equipment, and in all lease payments, rentals, and rights thereto, and in all proceeds derived from the Equipment, including insurance proceeds and refunds of insurance premiums. If Lender permits me to allow others to use or lease the Equipment, I agree to stamp any agreement between me and my lessee with language approved by Lender and to provide and update Lender with all current contact information of user or lessee. I also agree that, to the extent permitted by applicable law, collateral securing other loans, credit sales and leases that I may have with Lender or any affiliate of Lender, whether now or in the future, additionally will secure my Indebtedness under this Note. The Equipment, all leases and chattel paper of the Equipment, all lease payments, rentals, and rights thereto, proceeds, and my additional collateral securing other loans, credit sales, and leases with Lender or any affiliate of Lender, are individually, collectively and interchangeably referred to under this Note as my "Collateral." For purposes of this Note, the term "Indebtedness" means: (1) my indebtedness under this Note for payment of principal, interest, late charges, returned check fees, liquidated damages and any other amounts due hereunder; (2) to the extent permitted by applicable law, my indebtedness under any other loans, leases or other obligations that I may now and in the future owe to Lender or any affiliate of Lender, other than loans, leases or other obligations secured by vehicles or other goods which I represent on the loan, lease or other obligation documents are used or to be used by me primarily for personal, family or household purposes; (3) all additional funds that Lender or any affiliate of Lender may advance on my behalf as provided in this Note; and (4) Lender's costs and expenses incurred in enforcing Lender's rights under this Note, and in protecting and preserving the Collateral, including, to the extent permitted by applicable law, reimbursement of Lender's reasonable attorney's fees, court costs, and collection expenses.

**ACKNOWLEDGEMENT:** I (we) have read, accepted and acknowledge receipt of a completed copy of the Note, including the Terms and Conditions on the reverse side or following pages which are made a part hereof and I (we) agree to all its terms.

| Borrower: FAST FLOW PLUMBING, LLC | Co-Borrower: |
|---|---|
| Signature: X *(signed)* | Signature: X |
| Title: MEMBER | Title: |

MBFF2508 (06/01/2011)

**Mercedes-Benz Financial Services**   **Dealer Agreement – Direct Loans**

LOAN AGREEMENT DATE: 08/18/2021
BORROWER: FAST FLOW PLUMBING, LLC
DBA:

| 1095 Majaun Rd | Lexington | Fayette | KY | 40511-1185 |
|---|---|---|---|---|
| (Street No.) | (City) | (County) | (State) | (Zip) |

Description of Equipment: *See Property Schedule if 4 or more units*

| New/Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price | Titling Source |
|---|---|---|---|---|---|---|---|
| N | MERCEDES BENZ | SPRINTER | W1Y4ECHYXMT060270 | VAN | 2021 | $44,899.00 | DEALER |

In consideration of and for Mercedes-Benz Financial Services USA LLC, and its successors, transferees and assigns ("Lender") making a direct loan (the "Loan") to the Borrower named above to purchase the described Equipment, the undersigned Dealer agrees as follows:

1. **Incorporation of Certain Provisions of Dealer's Retail Installment Contract and Lease Program Agreement by Reference.** By signing below, Dealer accepts the Loan Agreement subject to the terms and conditions of the Retail Installment Contract and Lease Program Agreement with or assigned to Mercedes-Benz Financial Services USA LLC and Dealer.

2. **Dealer's Refund Obligations.** In the event that the Borrower prepays the Loan in full prior to maturity, or if Lender accelerates payment of the Loan as a result of the Borrower's default, Dealer agrees to refund and to pay to Lender, immediately on demand, the then unearned amount of any credit life, credit disability and property insurance premiums paid with the proceeds from the Note that are required by law or by agreement to be rebated or refunded by Dealer to Borrower. Dealer agrees that Lender may set-off Dealer's refund obligations against any reserve account or accounts that Dealer may maintain with Lender, and/or against any credits or amounts that Lender may owe to Dealer either as a result of the funding of a separate loan to another borrower, or for any other reason.

3. **Dealer is Not Lender's Agent.** Neither this Agreement, nor any action taken by Dealer with respect to the Note, except for the limited purpose of assisting in the completion of the Note, shall be deemed to create a principal-agency relationship between Dealer and Lender, or to authorize Dealer, or Dealer's employees, to act as Lender's representative.

4. **Miscellaneous.** This Agreement is subject to the substantive laws of the State of Texas for all purposes irrespective of the conflict of laws principles of that state. This Agreement is binding upon the parties hereto and their respective successors and assigns. Should any provision of this Agreement be deemed to be unenforceable, that provision shall be deemed as stricken, with all other provisions of this Agreement remaining in full force and effect. Dealer agrees to pay Lender's reasonable attorney's fees incurred in enforcing Lender's rights against Dealer under this Agreement. BOTH DEALER AND LENDER WAIVE THE RIGHT TO A TRIAL BY JURY AS TO ALL MATTERS ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT.

Dealer has executed this Agreement as of this 18th day of August, 2021.

Dealer Name: JEFF WYLER FORT MITCHELL, INC. DBA MB OF FORT MITCHELL
By (signature): X [signature]
Title: BUS MGR

Dealer Agreement – MBFF0041 (06/01/2011)

**Mercedes-Benz Financial Services**

**Note and Security Agreement (Multi-State)**

Date: 08/18/2021
Quote No.: 244811
MBFF2508 A

1. **Interest Rate:** Daily simple interest will be assessed on the Loan Amount at the following rate from the date of this Note until all of my obligations under this Note are fully paid and satisfied: ___8.39%___ per annum___. Interest will be computed on the basis of the actual number of days elapsed in a 365 day year, or a 366 day year if a leap year.
2. **Late Payment/Additional Charges:** If I fail to make any payment within ten (10) days of the due date, I agree to pay Lender a late payment fee in an amount equal to 5% of the unpaid amount, or such lesser amount as may be limited by law. In addition, I agree to pay a charge of $30, or such lesser amount as may be limited by law, for each check, draft or similar instrument presented to Lender that is returned or dishonored for any reason.
3. **Prepayment:** I may prepay the then unpaid principal balance, plus accrued interest and other amounts then owing under this Note, in full or in part at any time without penalty.
4. **Perfection of Security Interest:** I authorize Lender to perfect its security interest in the Collateral. I agree to reimburse Lender for all filing costs and perfection expenses, as well as for all costs of amending, continuing and terminating such filings.
5. **Covenants:** I agree: (1) not to sell, lease, transfer or assign the Collateral without Lender's prior written consent; (2) not to allow any other security interest or lien to be placed on or to attach to the Collateral; (3) not to make any material changes or alterations to the Equipment without Lender's prior written consent (including replacements, additions, accessories or substitutions); (4) not to remove the Equipment from the state in which I reside or have my principal offices, other than in the ordinary course of business, for a period in excess of sixty (60) consecutive days, without first obtaining Lender's prior written consent; (5) not to re-title the Equipment in another state without first notifying Lender; and (6) if I am a business entity, not to change my name or form or state of organization without first notifying Lender at least thirty (30) days in advance of such change. I further agree: (a) that anything that may be attached to the Equipment will become an accession to the Equipment, and will become part of the Collateral; (b) to make all necessary repairs to, and not to abandon the Equipment; (c) to abide by all laws and rules and regulations with respect to the use and operation of the Equipment, and to obtain all necessary permits and licenses in those jurisdictions where required; (d) to pay all taxes and assessments levied against the Equipment and to furnish Lender with proof of such payments; and (e) to permit Lender to inspect the Equipment at reasonable times.
6. **Insurance:** I agree to keep the Equipment continuously insured by an insurance company and with deductible approved by Lender, with comprehensive and collision coverage, and with coverage for any other hazards Lender may specify from time to time for coverage amounts not less than the actual cash value of the Equipment or the outstanding principal balance of my Indebtedness. I may purchase this insurance from any insurance company reasonably acceptable to Lender. I agree to provide Lender with written proof of a paid insurance policy, and subsequent renewals, showing Lender as a lender's loss payee and additional insured under my insurance policy, which policy will require at least thirty (30) days advance written notice to Lender before it may lapse, be reduced, canceled or terminated for any reason. I agree that all insurance proceeds, including any premium refunds, are payable first to Lender to the extent of its interest in the Equipment, and I assign my interest in same to Lender. Lender may apply any insurance proceeds and returned premiums received to the unpaid balance of my Indebtedness. Should I fail to purchase and maintain adequate insurance on the Equipment, as determined by Lender (at Lender's sole discretion), then Lender may (at Lender's sole option, and without any responsibility or liability to do so) purchase such insurance as Lender deems necessary to protect its interest. The amount advanced by Lender for said insurance shall be immediately due and repaid to Lender, together with interest with a rate up to 18% per annum, as limited by law, from the date of such advance. I authorize Lender to release to third parties any information necessary to facilitate insurance and tax monitoring and insurance placement. If there is a total loss on any item of Equipment, I agree to immediately pay to Lender all insurance proceeds and amounts needed to retire the unpaid principal balance plus accrued interest and any other allocable amounts then due and owing on such item of Equipment. All insurance policies financed under this Note, unless a shorter period is specified in the policy, end upon the original due date of the last payment due under this Note. If I am due any insurance refund, I will seek same from my insurance company. Lender does not require me to have credit life insurance.
THE INSURANCE REQUIRED UNDER THIS NOTE IS NOT PUBLIC LIABILITY INSURANCE AND DOES NOT COVER LIABILITY FOR INJURY TO ANY PERSONS OR DAMAGES TO PROPERTY.
7. **Default and Acceleration:** Lender has the right at its sole option to insist on immediate payment in full of all Indebtedness that I may owe to Lender upon the occurrence of any one or more of the following events, in each case to the extent permitted by applicable law: (1) if I fail to make any payment under this Note when due; or (2) if I am in default under any other provision of this Note; or (3) if I am in default under any other loan, lease, extension of credit, or obligation that I may then owe to Lender or any affiliate of Lender other than loans, leases, extensions of credit or obligations secured by vehicles or other goods which I represent on the loan, lease or other credit or obligation documents are used or to be used by me primarily for personal, family or household purposes; or (4) if I am other than an individual and I, without Lender's consent, (a) make a significant change in my management, ownership or control; or (b) merge, transfer, acquire or consolidate with any other entity; or (5) if I should become insolvent, or the subject of a bankruptcy or other relief from creditors; or (6) if any of the Equipment is seized under process of law; or (7) if any guaranty of my obligations under this Note is withdrawn or becomes unenforceable for any reason; or (8) if Lender reasonably believes itself to be insecure in the repayment of this Note. After default and acceleration, I agree to continue to pay Lender interest on the then unpaid balance of my Indebtedness at the rate of eighteen (18%) percent per annum, or such lesser rate as may be limited by law.
8. **Default Remedies:** Should I default under this Note, and Lender elects to accelerate payment of my Indebtedness, Lender may exercise all of the rights and remedies available to secured creditors generally under the Uniform Commercial Code. I agree to turn over and deliver the Collateral to Lender at my expense, at the time and at the location Lender may demand of me. Alternatively, to the extent permitted by applicable law, Lender may enter any premises or other place where the Collateral may be located, and take possession of the Collateral, and all other property then located on or in the Collateral, provided that Lender is able to do so without breach of the peace. To the extent permitted by applicable law, Lender may then sell the Collateral without warranty at public or private sale, and apply the sale proceeds to the satisfaction of my Indebtedness. Unless otherwise required by applicable law, Lender has no obligation to clean-up, repair, or prepare the Collateral for sale. I hereby agree that Lender may advertise and sell repossessed Collateral through www.usedtruckinventory.com or other internet websites through which equipment or motor vehicles similar to the Collateral is sold and that such sale shall be deemed a commercially reasonable disposition of the Collateral. Any requirement that Lender notify me of the sale or other disposition of the Collateral will be satisfied if Lender sends me a written communication at least ten (10) days in advance of the date on which a public sale is scheduled, or within ten (10) days in advance of the time after which a private sale or other disposition may take place. Furthermore, to the extent permitted by applicable law, upon default Lender may cancel any insurance financed under this Note and apply the refunded premium to my Indebtedness and I authorize Lender to notify anyone using equipment to pay Lender directly for my Indebtedness.
9. **Waivers:** All Borrowers and Guarantors waive presentment, notice, and demand for payment, and agree that our liability under this Note shall be joint and several with each other. We further agree that discharge or release of any party, or Collateral, or any extension of time for payment, or any delay in enforcing Lender's rights, will not cause Lender to lose any of its rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, I EXPRESSLY WAIVE ANY RIGHT TO A JURY TRIAL IN ANY DISPUTE REGARDING OR ARISING OUT OF THIS NOTE, THE SALE OF THE EQUIPMENT, OR MY RELATIONSHIP WITH LENDER OR EQUIPMENT SELLER.
10. **Collection/Attorney's Fees and Expenses:** If Lender sues me, or if Lender refers my loan to an attorney for collection, to the extent permitted by applicable law, I agree to pay Lender reasonable attorney's fees actually incurred. I further agree to reimburse Lender for its court costs and reasonable collection expenses incurred in enforcing Lender's rights under this Note.
11. **Savings Clause:** It is Lender's intent to fully comply with all laws and regulations limiting imposition and collection of interest and other fees and charges in connection with my loan. Should I be called upon, or should I ever pay interest or other fees and charges to Lender in excess of the amount(s) and rate(s) permitted, I agree that Lender may cure such violation by crediting any excess amount that I have paid against my then outstanding principal balance under this Note.
12. **No Agency Relationship; No Right to Assert Claims and Defenses:** I fully understand and unconditionally agree that neither the Equipment manufacturer and distributor, nor their employees, are Lender's partners, agents, or representatives, and have no right to commit, bind or obligate Lender in any way. I further understand and unconditionally agree that, except for the limited purpose of assisting in the completion of this Note, neither the Equipment seller nor its employees are Lender's partners, agents, or representatives, and have no right to commit, bind or obligate Lender in any way. TO THE EXTENT PERMITTED BY APPLICABLE LAW, MY OBLIGATIONS TO LENDER UNDER THIS NOTE ARE IRREVOCABLE, ABSOLUTE, AND UNCONDITIONAL AND ARE TO BE PAID OR PERFORMED IN ACCORDANCE WITH THEIR TERMS WITH NO RIGHT OF OFFSET, COUNTERCLAIM OR DEFENSE AGAINST LENDER OR ANY ASSIGNEE INCLUDING BUT NOT LIMITED TO ANY RIGHT OF OFFSET, COUNTERCLAIM OR DEFENSE ARISING FROM ANY EXPRESS OR IMPLIED WARRANTY RELATING TO THE EQUIPMENT INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.
13. **Representations and Warranties:** I represent and warrant to Lender that: (1) my correct legal name and state of residence or organization are listed on page 1 of this Note, and I am properly authorized, licensed and in good standing to conduct business in each applicable jurisdiction; (2) none of the preprinted provisions of this Note have been altered, modified, or stricken by me or by anyone else; (3) I or my authorized representative properly executed this Note in my name and my signature on this Note, or that of my authorized representative, is genuine; and (4) I have and intend to license, title, and register the Equipment in the proper state or jurisdiction.
14. **Power of Attorney:** To the extent permitted by law, I hereby appoint Lender as my attorney-in-fact. My grant of this power of attorney is coupled with an interest and is irrevocable until all obligations I owe under this Note are paid in full. As my attorney-in-fact, Lender can, in my name or Lender's name: (a) sign on my behalf all certificates of ownership, registration cards, financing statements, applications, affidavits or any other documents required to register and properly perfect Lender's security interest in the Collateral; (b) transfer my entire interest in the Collateral as part of a repossession and sale; (c) act on my behalf in insurance matters relating to the Collateral, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf and cancel any credit life, credit disability, guaranteed automotive protection coverage, extended warranty or other optional insurance financed under this Note and apply the refunded premium or cost to my outstanding balance if I am in default; and (d) make claims on my behalf under any such insurance policies related to the Collateral.
15. **Governing Law:** This Note shall be deemed received and accepted by Lender in Fort Worth, Texas on the date of funding. Furthermore this Note shall be governed and construed under the laws of the State of the Borrower's address at the time of execution of this Note, as indicated on Page 1, irrespective of the conflict of laws principles of that state.
16. **Miscellaneous:** In this Note, the words "I", "me", "my", "we", "us" and "our" individually; collectively and interchangeably mean each person or entity signing this Note as a Borrower, Co-Borrower or Guarantor, their successors and assigns, and all other persons that may be or become obligated under this Note. All schedules executed in connection with this Note are part of this Note. This Note and any such schedules constitute the entire Note between the parties. No modification or amendment of this Note shall be effective unless in writing signed by all parties. All provisions of this Note that are prohibited by applicable law shall be ineffective solely to the extent of such prohibition without invalidating the other provisions of this Note. Any waiver of Lender's rights and remedies under this Note shall be effective only if specifically agreed by Lender in writing. To the extent permitted by law, I give Lender permission to monitor and record any telephone conversation between Lender and me, including my representatives, service providers and agents.
17. **ACH Authorization.** From time to time I may contact Lender by telephone or otherwise to initiate single or reoccurring electronic debit entries to a specified business bank account held at the financial institution I designate through the Automated Clearing House (ACH) network. I hereby authorize Lender to initiate all such debit entries in the amount of my monthly payment or payments under the Note, plus all other amounts due at the time not exceeding $100.00 (or in such other amount as I specify from time to time) and agree to be bound by the rules and regulations of the National Automated Clearing House Association, as they may change from time to time, applicable thereto.
18. **Authorization to Share Information:** Lender may collect non-public information from Borrower and any Guarantor which may consist of information on credit applications or other forms, information regarding transactions with Lender, affiliates or others and information that Lender receives from credit reporting agencies and other outside sources during the time period that a line of credit is in effect or that any balance is due to Lender under any lease or loan agreement ("Information"). All Borrowers and Guarantors agree that Lender may disclose any of the Information to any affiliate, assigns or agents of Lender.

MBFF2508 (06/01/2011)

**Mercedes-Benz Financial Services**        **Dealer Agreement – Direct Loans**

**LOAN AGREEMENT DATE:** 12/05/2019
**BORROWER:** FAST FLOW PLUMBING, LLC

| 1095 Majaun Rd | Lexington | | KY | 405111185 |
|---|---|---|---|---|
| (Street No.) | (City) | (County) | (State) | (Zip) |

Description of Equipment: *See Property Schedule if 4 or more units*

| New/Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price | Titling Source |
|---|---|---|---|---|---|---|---|
| N | Mercedes-Benz | M2CA76 | WD3PF1CD6KP061147 | Van | 2019 | $43,705.00 | DEALER |
| | | | | | | | |
| | | | | | | | |

In consideration of and for Mercedes-Benz Financial Services USA LLC, and its successors, transferees and assigns ("Lender") making a direct loan (the "Loan") to the Borrower named above to purchase the described Equipment, the undersigned Dealer agrees as follows:

1. **Incorporation of Certain Provisions of Dealer's Retail Installment Contract and Lease Program Agreement by Reference.** By signing below, Dealer accepts the Loan Agreement subject to the terms and conditions of the Retail Installment Contract and Lease Program Agreement with or assigned to Mercedes-Benz Financial Services USA LLC and Dealer.

2. **Dealer's Refund Obligations.** In the event that the Borrower prepays the Loan in full prior to maturity, or if Lender accelerates payment of the Loan as a result of the Borrower's default, Dealer agrees to refund and to pay to Lender, immediately on demand, the then unearned amount of any credit life, credit disability and property insurance premiums paid with the proceeds from the Note that are required by law or by agreement to be rebated or refunded by Dealer to Borrower. Dealer agrees that Lender may set-off Dealer's refund obligations against any reserve account or accounts that Dealer may maintain with Lender, and/or against any credits or amounts that Lender may owe to Dealer either as a result of the funding of a separate loan to another borrower, or for any other reason.

3. **Dealer is Not Lender's Agent.** Neither this Agreement, nor any action taken by Dealer with respect to the Note, except for the limited purpose of assisting in the completion of the Note, shall be deemed to create a principal-agency relationship between Dealer and Lender, or to authorize Dealer, or Dealer's employees, to act as Lender's representative.

4. **Miscellaneous.** This Agreement is subject to the substantive laws of the State of Texas for all purposes irrespective of the conflict of laws principles of that state. This Agreement is binding upon the parties hereto and their respective successors and assigns. Should any provision of this Agreement be deemed to be unenforceable, that provision shall be deemed as stricken, with all other provisions of this Agreement remaining in full force and effect. Dealer agrees to pay Lender's reasonable attorney's fees incurred in enforcing Lender's rights against Dealer under this Agreement. **BOTH DEALER AND LENDER WAIVE THE RIGHT TO A TRIAL BY JURY AS TO ALL MATTERS ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT.**

Dealer has executed this Agreement as of this 5th day of December, 2019.

Dealer Name: LAGREW MOTORS, INC.
By (signature): X _____
Title: FINANCE MANAGER

**Mercedes-Benz Financial Services**

**Note and Security Agreement (Multi-State)**

Date: 12/05/2019
Quote #: 977003
MBFF2508A

| BORROWER: | CO-BORROWER |
|---|---|
| FAST FLOW PLUMBING, LLC<br>1095 Majaun Rd<br>Lexington     KY     405111185 | |

**LENDER:** Mercedes-Benz Financial Services USA LLC (14372 Heritage Parkway, Fort Worth, Texas 76177), *and its successors, transferees and assigns.*

I (meaning individually, collectively, and interchangeably, all Borrowers named above, jointly and severally) have entered into this Note and Security Agreement ("Note") with Lender in the original principal amount of $46,043.57 ("Loan Amount") to borrow funds to be used to purchase the following described equipment ("Equipment"). I acknowledge that I have accepted delivery of the Equipment in good order without reservation of rights and without implied warranty as to condition, merchantability, and suitability for any purpose. I further acknowledge and certify that I have entered into this Note with Lender, and I intend to use the purchased Equipment, primarily for business or commercial purposes, and not for personal, family, household or agricultural purposes.

**DESCRIPTION OF EQUIPMENT:**   List Payoff to:

| New/Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price |
|---|---|---|---|---|---|---|
| N | Mercedes-Benz | M2CA76 | WD3PF1CD6KP061147 | Van | 2019 | $43,705.00 |
| | | | | | | |

**PROMISE TO PAY:** I promise to pay to the order of Lender the Loan Amount together with daily simple interest thereon at the rate set forth on page 2 of this Note from the date of this Note until all of my obligations under this Note are fully paid and satisfied.

**PAYMENT TERMS:** My loan is payable in  72  payments of  $882.96  each, commencing on  01/04/2020  and continuing on the  4th  day of each successive month thereafter, which includes a final payment of the then unpaid principal and interest in the estimated amount of  $882.96  due on  12/04/2025  (except as otherwise stated on the Payment Schedule Addendum attached hereto and made a part hereof). The amount of my final payment may vary depending upon when Lender receives my periodic loan payments, and will include the unpaid principal balance, interest and any other amounts owed as of the final payment due date.

**SECURITY AGREEMENT:** In order to secure the prompt and punctual payment and satisfaction of my Indebtedness (as defined herein), I am granting Lender a security interest in the Equipment, and in all accessions, replacements and additions to the Equipment, and in all leases and chattel paper of the Equipment, and in all lease payments, rentals, and rights thereto, and in all proceeds derived from the Equipment, including insurance proceeds and refunds of insurance premiums. If Lender permits me to allow others to use or lease the Equipment, I agree to stamp any agreement between me and my lessee with language approved by Lender and to provide and update Lender with all current contact information of user or lessee. I also agree that, to the extent permitted by applicable law, collateral securing other loans, credit sales and leases that I may have with Lender or any affiliate of Lender, whether now or in the future, additionally will secure my Indebtedness under this Note. The Equipment, all leases and chattel paper of the Equipment, all lease payments, rentals, and rights thereto, proceeds, and my additional collateral securing other loans, credit sales, and leases with Lender or any affiliate of Lender, are individually, collectively and interchangeably referred to under this Note as my "Collateral." For purposes of this Note, the term "Indebtedness" means: (1) my indebtedness under this Note for payment of principal, interest, late charges, returned check fees, liquidated damages and any other amounts due hereunder; (2) to the extent permitted by applicable law, my indebtedness under any other loans, leases or other obligations that I may now and in the future owe to Lender or any affiliate of Lender, other than loans, leases or other obligations secured by vehicles or other goods which I represent on the loan, lease or other obligation documents are used or to be used by me primarily for personal, family or household purposes; (3) all additional funds that Lender or any affiliate of Lender may advance on my behalf as provided in this Note; and (4) Lender's costs and expenses incurred in enforcing Lender's rights under this Note, and in protecting and preserving the Collateral, including, to the extent permitted by applicable law, reimbursement of Lender's reasonable attorney's fees, court costs, and collection expenses.

**ACKNOWLEDGEMENT:** I (we) have read, accepted and acknowledge receipt of a completed copy of the Note, including the Terms and Conditions on the reverse side or following pages which are made a part hereof and I (we) agree to all its terms.

| Borrower:<br>FAST FLOW PLUMBING, LLC<br><br>Signature: X _____<br>Title: MEMBER | Co-Borrower:<br><br><br>Signature: X _____<br>Title: |
|---|---|

MBFF2508 (06/01/2011)

**Mercedes-Benz Financial Services**

**Note and Security Agreement (Multi-State)**

Date: 12/05/2019
Quote No.: 977003
MBFF2508A

1. **Interest Rate:** Daily simple interest will be assessed on the Loan Amount at the following rate from the date of this Note until all of my obligations under this Note are fully paid and satisfied: _11.29% per annum_. Interest will be computed on the basis of the actual number of days elapsed in a 365 day year, or a 366 day year if a leap year.
2. **Late Payment/Additional Charges:** If I fail to make any payment within ten (10) days of the due date, I agree to pay Lender a late payment fee in an amount equal to 5% of the unpaid amount, or such lesser amount as may be limited by law. In addition, I agree to pay a charge of $30, or such lesser amount as may be limited by law, for each check, draft or similar instrument presented to Lender that is returned or dishonored for any reason.
3. **Prepayment:** I may prepay the then unpaid principal balance, plus accrued interest and other amounts then owing under this Note, in full or in part at any time without penalty.
4. **Perfection of Security Interest:** I authorize Lender to perfect its security interest in the Collateral. I agree to reimburse Lender for all filing costs and perfection expenses, as well as for all costs of amending, continuing and terminating such filings.
5. **Covenants:** I agree: (1) not to sell, lease, transfer or assign the Collateral without Lender's prior written consent; (2) not to allow any other security interest or lien to be placed on or to attach to the Collateral; (3) not to make any material changes or alterations to the Equipment without Lender's prior written consent (including replacements, additions, accessories or substitutions); (4) not to remove the Equipment from the state in which I reside or have my principal offices, other than in the ordinary course of business, for a period in excess of sixty (60) consecutive days, without first obtaining Lender's prior written consent; (5) not to re-title the Equipment in another state without first notifying Lender; and (6) if I am a business entity, not to change my name or form or state of organization without first notifying Lender at least thirty (30) days in advance of such change. I further agree: (a) that anything that may be attached to the Equipment will become an accession to the Equipment, and will become part of the Collateral; (b) to make all necessary repairs to, and not to abandon the Equipment; (c) to abide by all laws and rules and regulations with respect to the use and operation of the Equipment, and to obtain all necessary permits and licenses in those jurisdictions where required; (d) to pay all taxes and assessments levied against the Equipment and to furnish Lender with proof of such payments; and (e) to permit Lender to inspect the Equipment at reasonable times.
6. **Insurance:** I agree to keep the Equipment continuously insured by an insurance company and with deductible approved by Lender, with comprehensive and collision coverage, and with coverage for any other hazards Lender may specify from time to time for coverage amounts not less than the actual cash value of the Equipment or the outstanding principal balance of my Indebtedness. I may purchase this insurance from any insurance company reasonably acceptable to Lender. I agree to provide Lender with written proof of a paid insurance policy, and subsequent renewals, showing Lender as a lender's loss payee and additional insured under my insurance policy, which policy will require at least thirty (30) days advance written notice to Lender before it may lapse, be reduced, canceled or terminated for any reason. I agree that all insurance proceeds, including any premium refunds, are payable first to Lender to the extent of its interest in the Equipment, and I assign my interest in same to Lender. Lender may apply any insurance proceeds and returned premiums received to the unpaid balance of my Indebtedness. Should I fail to purchase and maintain adequate insurance on the Equipment, as determined by Lender (at Lender's sole discretion), then Lender may (at Lender's sole option, and without any responsibility or liability to do so) purchase such insurance as Lender deems necessary to protect its interest. The amount advanced by Lender for said insurance shall be immediately due and repaid to Lender, together with interest with a rate up to 18% per annum, as limited by law, from the date of such advance. I authorize Lender to release to third parties any information necessary to facilitate insurance and tax monitoring and insurance placement. If there is a total loss on any item of Equipment, I agree to immediately pay to Lender all insurance proceeds and amounts needed to retire the unpaid principal balance plus accrued interest and any other allocable amounts then due and owing on such item of Equipment. All insurance policies financed under this Note, unless a shorter period is specified in the policy, end upon the original due date of the last payment due under this Note. If I am due any insurance refund, I will seek same from my insurance company. Lender does not require me to have credit life insurance.
THE INSURANCE REQUIRED UNDER THIS NOTE IS NOT PUBLIC LIABILITY INSURANCE AND DOES NOT COVER LIABILITY FOR INJURY TO ANY PERSONS OR DAMAGES TO PROPERTY.
7. **Default and Acceleration:** Lender has the right at its sole option to insist on immediate payment in full of all Indebtedness that I may owe to Lender upon the occurrence of any one or more of the following events, in each case to the extent permitted by applicable law: (1) if I fail to make any payment under this Note when due; or (2) if I am in default under any other provision of this Note; or (3) if I am in default under any other loan, lease, extension of credit, or obligation that I may then owe to Lender or any affiliate of Lender other than loans, leases, extensions of credit or obligations secured by vehicles or other goods which I represent on the loan, lease or other credit or obligation documents are used or to be used by me primarily for personal, family or household purposes; or (4) if I am other than an individual and I, without Lender's consent, (a) make a significant change in my management, ownership or control; or (b) merge, transfer, acquire or consolidate with any other entity; or (5) if I should become insolvent, or the subject of a bankruptcy or other relief from creditors; or (6) if any of the Equipment is seized under process of law; or (7) if any guaranty of my obligations under this Note is withdrawn or becomes unenforceable for any reason; or (8) if Lender reasonably believes itself to be insecure in the repayment of this Note. After default and acceleration, I agree to continue to pay Lender interest on the then unpaid balance of my Indebtedness at the rate of eighteen (18%) percent per annum, or such lesser rate as may be limited by law.
8. **Default Remedies:** Should I default under this Note, and Lender elects to accelerate payment of my Indebtedness, Lender may exercise all of the rights and remedies available to secured creditors generally under the Uniform Commercial Code. I agree to turn over and deliver the Collateral to Lender at my expense, at the time and at the location Lender may demand of me. Alternatively, to the extent permitted by applicable law, Lender may enter any premises or other place where the Collateral may be located, and take possession of the Collateral, and all other property then located on or in the Collateral, provided that Lender is able to do so without breach of the peace. To the extent permitted by applicable law, Lender may then sell the Collateral without warranty at public or private sale, and apply the sale proceeds to the satisfaction of my Indebtedness. Unless otherwise required by applicable law, Lender has no obligation to clean-up, repair, or prepare the Collateral for sale. I hereby agree that Lender may advertise and sell repossessed Collateral through www.usedtruckinventory.com or other Internet websites through which equipment or motor vehicles similar to the Collateral is sold and that such sale shall be deemed a commercially reasonable disposition of the Collateral. Any requirement that Lender notify me of the sale or other disposition of the Collateral will be satisfied if Lender sends me a written communication at least ten (10) days in advance of the date on which a public sale is scheduled, or within ten (10) days in advance of the time after which a private sale or other disposition may take place. Furthermore, to the extent permitted by applicable law, upon default Lender may cancel any insurance financed under this Note and apply the refunded premium to my Indebtedness and I authorize Lender to notify anyone using equipment to pay Lender directly for my Indebtedness.
9. **Waivers:** All Borrowers and Guarantors waive presentment, notice, and demand for payment, and agree that our liability under this Note shall be joint and several with each other. We further agree that discharge or release of any party, or Collateral, or any extension of time for payment, or any delay in enforcing Lender's rights, will not cause Lender to lose any of its rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, I EXPRESSLY WAIVE ANY RIGHT TO A JURY TRIAL IN ANY DISPUTE REGARDING OR ARISING OUT OF THIS NOTE, THE SALE OF THE EQUIPMENT, OR MY RELATIONSHIP WITH LENDER OR EQUIPMENT SELLER.
10. **Collection/Attorney's Fees and Expenses:** If Lender sues me, or if Lender refers my loan to an attorney for collection, to the extent permitted by applicable law, I agree to pay Lender reasonable attorney's fees actually incurred. I further agree to reimburse Lender for its court costs and reasonable collection expenses incurred in enforcing Lender's rights under this Note.
11. **Savings Clause:** It is Lender's intent to fully comply with all laws and regulations limiting imposition and collection of interest and other fees and charges in connection with my loan. Should I be called upon, or should I ever pay interest or other fees and charges to Lender in excess of the amount(s) and rate(s) permitted, I agree that Lender may cure such violation by crediting any excess amount that I have paid against my then outstanding principal balance under this Note.
12. **No Agency Relationship; No Right to Assert Claims and Defenses:** I fully understand and unconditionally agree that neither the Equipment manufacturer and distributor, nor their employees, are Lender's partners, agents, or representatives, and have no right to commit, bind or obligate Lender in any way. I further understand and unconditionally agree that, except for the limited purpose of assisting in the completion of this Note, neither the Equipment seller nor its employees are Lender's partners, agents, or representatives, and have no right to commit, bind or obligate Lender in any way. TO THE EXTENT PERMITTED BY APPLICABLE LAW, MY OBLIGATIONS TO LENDER UNDER THIS NOTE ARE IRREVOCABLE, ABSOLUTE, AND UNCONDITIONAL AND ARE TO BE PAID OR PERFORMED IN ACCORDANCE WITH THEIR TERMS WITH NO RIGHT OF OFFSET, COUNTERCLAIM OR DEFENSE AGAINST LENDER OR ANY ASSIGNEE, INCLUDING BUT NOT LIMITED TO ANY RIGHT OF OFFSET, COUNTERCLAIM OR DEFENSE ARISING FROM ANY EXPRESS OR IMPLIED WARRANTY RELATING TO THE EQUIPMENT INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.
13. **Representations and Warranties:** I represent and warrant to Lender that: (1) my correct legal name and state of residence or organization are listed on page 1 of this Note, and I am properly authorized, licensed and in good standing to conduct business in each applicable jurisdiction; (2) none of the preprinted provisions of this Note have been altered, modified, or stricken by me or by anyone else; (3) I or my authorized representative properly executed this Note in my name and my signature on this Note, or that of my authorized representative, is genuine; and (4) I have and intend to license, title, and register the Equipment in the proper state or jurisdiction.
14. **Power of Attorney:** To the extent permitted by law, I hereby appoint Lender as my attorney-in-fact. My grant of this power of attorney is coupled with an interest and is irrevocable until all obligations I owe under this Note are paid in full. As my attorney-in-fact, Lender can, in my name or Lender's name: (a) sign on my behalf all certificates of ownership, registration cards, financing statements, applications, affidavits or any other documents required to register and properly perfect Lender's security interest in the Collateral; (b) transfer my entire interest in the Collateral as part of a repossession and sale; (c) act on my behalf in insurance matters relating to the Collateral, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf and cancel any credit life, credit disability, guaranteed automotive protection coverage, extended warranty or other optional insurance financed under this Note and apply the refunded premium or cost to my outstanding balance if I am in default; and (d) make claims on my behalf under any such insurance policies related to the Collateral.
15. **Governing Law:** This Note shall be deemed received and accepted by Lender in Fort Worth, Texas on the date of funding. Furthermore this Note shall be governed and construed under the laws of the State of the Borrower's address at the time of execution of this Note, as indicated on Page 1, irrespective of the conflict of laws principles of that state.
16. **Miscellaneous:** In this Note, the words "I", "me", "my", "we", "us" and "our" individually, collectively and interchangeably mean each person or entity signing this Note as a Borrower, Co-Borrower or Guarantor, their successors and assigns, and all other persons that may be or become obligated under this Note. All schedules executed in connection with this Note are part of this Note. This Note and any such schedules constitute the entire Note between the parties. No modification or amendment of this Note shall be effective unless in writing signed by all parties. All provisions of this Note that are prohibited by applicable law shall be ineffective solely to the extent of such prohibition without invalidating the other provisions of this Note. Any waiver of Lender's rights and remedies under this Note shall be effective only if specifically agreed by Lender in writing. To the extent permitted by law, I give Lender permission to monitor and record any telephone conversation between Lender and me, including my representatives, service providers and agents.
17. **ACH Authorization.** From time to time I may contact Lender by telephone or otherwise to initiate single or reoccurring electronic debit entries to a specified business bank account held at the financial institution I designate through the Automated Clearing House (ACH) network. I hereby authorize Lender to initiate all such debit entries in the amount of my monthly payment or payments under the Note, plus all other amounts due at the time not exceeding $100.00 (or in such other amount as I specify from time to time) and agree to be bound by the rules and regulations of the National Automated Clearing House Association, as they may change from time to time, applicable thereto.
18. **Authorization to Share Information:** Lender may collect non-public information from Borrower and any Guarantor which may consist of information on credit applications or other forms, information regarding transactions with Lender, affiliates or others and information that Lender receives from credit reporting agencies and other outside sources during the time period that a line of credit is in effect or that any balance is due to Lender under any lease or loan agreement ("Information"). All Borrowers and Guarantors agree that Lender may disclose any of the Information to any affiliate, assigns or agents of Lender.

MBFF2508 (06/01/2011)

5001740809001

**Mercedes-Benz Financial Services**

**Note and Security Agreement (Multi-State)**

Date: 11/13/2020
Quote #: 1009981
MBFF2508A

| BORROWER: | CO-BORROWER |
|---|---|
| FAST FLOW PLUMBING, LLC | |
| 1095 Majaun Rd | |
| Lexington  KY  405111185 | |

**LENDER:** Mercedes-Benz Financial Services USA LLC (14372 Heritage Parkway, Fort Worth, Texas 76177), *and its successors, transferees and assigns.*

I (meaning individually, collectively, and interchangeably, all Borrowers named above, jointly and severally) have entered into this Note and Security Agreement ("Note") with Lender in the original principal amount of $58,275.00 ("Loan Amount") to borrow funds to be used to purchase the following described equipment ("Equipment"). I acknowledge that I have accepted delivery of the Equipment in good order without reservation of rights and without implied warranty as to condition, merchantability, and suitability for any purpose. I further acknowledge and certify that I have entered into this Note with Lender, and I intend to use the purchased Equipment, primarily for business or commercial purposes, and not for personal, family, household or agricultural purposes.

**DESCRIPTION OF EQUIPMENT:**    List Payoff to:

| New//Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price |
|---|---|---|---|---|---|---|
| N | Mercedes-Benz | M2CAE6 | W1Y4ECHY0LT024800 | Van | 2019 | $51,826.00 |

**PROMISE TO PAY:** I promise to pay to the order of Lender the Loan Amount together with daily simple interest thereon at the rate set forth on page 2 of this Note from the date of this Note until all of my obligations under this Note are fully paid and satisfied.

**PAYMENT TERMS:** My loan is payable in __72__ payments of __$1,087.93__ each, commencing on __12/13/2020__ and continuing on the __13th__ day of each successive month thereafter, which includes a final payment of the then unpaid principal and interest in the estimated amount of __$1,087.93__ due on __11/13/2026__ (except as otherwise stated on the Payment Schedule Addendum attached hereto and made a part hereof). The amount of my final payment may vary depending upon when Lender receives my periodic loan payments, and will include the unpaid principal balance, interest and any other amounts owed as of the final payment due date.

**SECURITY AGREEMENT:** In order to secure the prompt and punctual payment and satisfaction of my Indebtedness (as defined herein), I am granting Lender a security interest in the Equipment, and in all accessions, replacements and additions to the Equipment, and in all leases and chattel paper of the Equipment, and in all lease payments, rentals, and rights thereto, and in all proceeds derived from the Equipment, including insurance proceeds and refunds of insurance premiums. If Lender permits me to allow others to use or lease the Equipment, I agree to stamp any agreement between me and my lessee with language approved by Lender and to provide and update Lender with all current contact information of user or lessee. I also agree that, to the extent permitted by applicable law, collateral securing other loans, credit sales and leases that I may have with Lender or any affiliate of Lender, whether now or in the future, additionally will secure my Indebtedness under this Note. The Equipment, all leases and chattel paper of the Equipment, all lease payments, rentals, and rights thereto, proceeds, and my additional collateral securing other loans, credit sales, and leases with Lender or any affiliate of Lender, are individually, collectively and interchangeably referred to under this Note as my "Collateral." For purposes of this Note, the term "Indebtedness" means: (1) my Indebtedness under this Note for payment of principal, interest, late charges, returned check fees, liquidated damages and any other amounts due hereunder; (2) to the extent permitted by applicable law, my indebtedness under any other loans, leases or other obligations that I may now and in the future owe to Lender or any affiliate of Lender, other than loans, leases or other obligations secured by vehicles or other goods which I represent on the loan, lease or other obligation documents are used or to be used by me primarily for personal, family or household purposes; (3) all additional funds that Lender or any affiliate of Lender may advance on my behalf as provided in this Note; and (4) Lender's costs and expenses incurred in enforcing Lender's rights under this Note, and in protecting and preserving the Collateral, including, to the extent permitted by applicable law, reimbursement of Lender's reasonable attorney's fees, court costs, and collection expenses.

**ACKNOWLEDGEMENT:** I (we) have read, accepted and acknowledge receipt of a completed copy of the Note, including the Terms and Conditions on the reverse side or following pages which are made a part hereof and I (we) agree to all its terms.

| Borrower: | Co-Borrower: |
|---|---|
| FAST FLOW PLUMBING, LLC | |
| Signature: X *[signed]* | Signature: X _____ |
| Title: ~~PRESIDENT~~ Member | Title: |

**Mercedes-Benz Financial Services**

**Note and Security Agreement (Multi-State)**

Date: 11/13/2020
Quote No.: 1009981
MBFF2508A

1. **Interest Rate:** Daily simple interest will be assessed on the Loan Amount at the following rate from the date of this Note until all of my obligations under this Note are fully paid and satisfied: 10.29% per annum. Interest will be computed on the basis of the actual number of days elapsed in a 365 day year, or a 366 day year if a leap year.
2. **Late Payment/Additional Charges:** If I fail to make any payment within ten (10) days of the due date, I agree to pay Lender a late payment fee in an amount equal to 5% of the unpaid amount, or such lesser amount as may be limited by law. In addition, I agree to pay a charge of $30, or such lesser amount as may be limited by law, for each check, draft or similar instrument presented to Lender that is returned or dishonored for any reason.
3. **Prepayment:** I may prepay the then unpaid principal balance, plus accrued interest and other amounts then owing under this Note, in full or in part at any time without penalty.

4. **Perfection of Security Interest:** I authorize Lender to perfect its security interest in the Collateral. I agree to reimburse Lender for all filing costs and perfection expenses, as well as for all costs of amending, continuing and terminating such filings.
5. **Covenants:** I agree: (1) not to sell, lease, transfer or assign the Collateral without Lender's prior written consent; (2) not to allow any other security interest or lien to be placed on or to attach to the Collateral; (3) not to make any material changes or alterations to the Equipment without Lender's prior written consent (including replacements, additions, accessories or substitutions); (4) not to remove the Equipment from the state in which I reside or have my principal offices, other than in the ordinary course of business, for a period in excess of sixty (60) consecutive days, without first obtaining Lender's prior written consent; (5) not to re-title the Equipment in another state without first notifying Lender; and (6) if I am a business entity, not to change my name or form or state of organization without first notifying Lender at least thirty (30) days in advance of such change. I further agree: (a) that anything that may be attached to the Equipment will become an accession to the Equipment, and will become part of the Collateral; (b) to make all necessary repairs to, and not to abandon the Equipment; (c) to abide by all laws and rules and regulations with respect to the use and operation of the Equipment, and to obtain all necessary permits and licenses in those jurisdictions where required; (d) to pay all taxes and assessments levied against the Equipment and to furnish Lender with proof of such payments; and (e) to permit Lender to inspect the Equipment at reasonable times.
6. **Insurance:** I agree to keep the Equipment continuously insured by an insurance company and with deductible approved by Lender, with comprehensive and collision coverage, and with coverage for any other hazards Lender may specify from time to time for coverage amounts not less than the actual cash value of the Equipment or the outstanding principal balance of my Indebtedness. I may purchase this insurance from any insurance company reasonably acceptable to Lender. I agree to provide Lender with written proof of a paid insurance policy, and subsequent renewals, showing Lender as a lender's loss payee and additional insured under my insurance policy, which policy will require at least thirty (30) days advance written notice to Lender before it may lapse, be reduced, canceled or terminated for any reason. I agree that all insurance proceeds, including any premium refunds, are payable first to Lender to the extent of its interest in the Equipment, and I assign my interest in same to Lender. Lender may apply any insurance proceeds and returned premiums received to the unpaid balance of my Indebtedness. Should I fail to purchase and maintain adequate insurance on the Equipment, as determined by Lender (at Lender's sole discretion), then Lender may (at Lender's sole option, and without any responsibility or liability to do so) purchase such insurance as Lender deems necessary to protect its interest. The amount advanced by Lender for said insurance shall be immediately due and repaid to Lender, together with interest with a rate up to 18% per annum, as limited by law, from the date of such advance. I authorize Lender to release to third parties any information necessary to facilitate insurance and tax monitoring and insurance placement. If there is a total loss on any item of Equipment, I agree to immediately pay to Lender all insurance proceeds and amounts needed to retire the unpaid principal balance plus accrued interest and any other allocable amounts then due and owing on such item of Equipment. All insurance policies financed under this Note, unless a shorter period is specified in the policy, and upon the original due date of the last payment due under this Note. If I am due any insurance refund, I will seek same from my insurance company. Lender does not require me to have credit life insurance.
**THE INSURANCE REQUIRED UNDER THIS NOTE IS NOT PUBLIC LIABILITY INSURANCE AND DOES NOT COVER LIABILITY FOR INJURY TO ANY PERSONS OR DAMAGES TO PROPERTY.**
7. **Default and Acceleration:** Lender has the right at its sole option to insist on immediate payment in full of all Indebtedness that I may owe to Lender upon the occurrence of any one or more of the following events, in each case to the extent permitted by applicable law: (1) if I fail to make any payment under this Note when due; or (2) if I am in default under any other provision of this Note; or (3) if I am in default under any other loan, lease, extension of credit, or obligation that I may then owe to Lender or any affiliate of Lender other than loans, leases, extensions of credit or obligations secured by vehicles or other goods which I represent on the loan, lease or other credit or obligation documents are used or to be used by me primarily for personal, family or household purposes; or (4) if I am other than an individual and I, without Lender's consent, (a) make a significant change in my management, ownership or control; or (b) merge, transfer, acquire or consolidate with any other entity; or (5) if I should become insolvent, or the subject of a bankruptcy or other relief from creditors; or (6) if any of the Equipment is seized under process of law; or (7) if any guaranty of my obligations under this Note is withdrawn or becomes unenforceable for any reason; or (8) if Lender reasonably believes itself to be insecure in the repayment of this Note. After default and acceleration, I agree to continue to pay Lender interest on the then unpaid balance of my Indebtedness at the rate of eighteen (18%) percent per annum, or such lesser rate as may be limited by law.
8. **Default Remedies:** Should I default under this Note, and Lender elects to accelerate payment of my Indebtedness, Lender may exercise all of the rights and remedies available to secured creditors generally under the Uniform Commercial Code. I agree to turn over and deliver the Collateral to Lender at my expense, at the time and at the location Lender may demand of me. Alternatively, to the extent permitted by applicable law, Lender may enter any premises or other place where the Collateral may be located, and take possession of the Collateral, and all other property then located on or in the Collateral, provided that Lender is able to do so without breach of the peace. To the extent permitted by applicable law, Lender may then sell the Collateral without warranty at public or private sale, and apply the sale proceeds to the satisfaction of my Indebtedness. Unless otherwise required by applicable law, Lender has no obligation to clean-up, repair, or prepare the Collateral for sale. I hereby agree that Lender may advertise and sell repossessed Collateral through www.usedtruckinventory.com or other internet websites through which equipment or motor vehicles similar to the Collateral is sold and that such sale shall be deemed a commercially reasonable disposition of the Collateral. Any requirement that Lender notify me of the sale or other disposition of the Collateral will be satisfied if Lender sends me a written communication at least ten (10) days in advance of the date on which a public sale is scheduled, or within ten (10) days in advance of the time after which a private sale or other disposition may take place. Furthermore, to the extent permitted by applicable law, upon default Lender may cancel any insurance financed under this Note and apply the refunded premium to my Indebtedness and I authorize Lender to notify anyone using equipment to pay Lender directly for my Indebtedness.
9. **Waivers:** All Borrowers and Guarantors waive presentment, notice, and demand for payment, and agree that our liability under this Note shall be joint and several with each other. We further agree that discharge or release of any party, or Collateral, or any extension of time for payment, or any delay in enforcing Lender's rights, will not cause Lender to lose any of its rights. **TO THE EXTENT PERMITTED BY APPLICABLE LAW, I EXPRESSLY WAIVE ANY RIGHT TO A JURY TRIAL IN ANY DISPUTE REGARDING OR ARISING OUT OF THIS NOTE, THE SALE OF THE EQUIPMENT, OR MY RELATIONSHIP WITH LENDER OR EQUIPMENT SELLER.**
10. **Collection/Attorney's Fees and Expenses:** If Lender sues me, or if Lender refers my loan to an attorney for collection, to the extent permitted by applicable law, I agree to pay Lender reasonable attorney's fees actually incurred. I further agree to reimburse Lender for its court costs and reasonable collection expenses incurred in enforcing Lender's rights under this Note.
11. **Savings Clause:** It is Lender's intent to fully comply with all laws and regulations limiting imposition and collection of interest and other fees and charges in connection with my loan. Should I be called upon, or should I ever pay interest or other fees and charges to Lender in excess of the amount(s) and rate(s) permitted, I agree that Lender may cure such violation by crediting any excess amount that I have paid against my then outstanding principal balance under this Note.
12. **No Agency Relationship; No Right to Assert Claims and Defenses:** I fully understand and unconditionally agree that neither the Equipment manufacturer and distributor, nor their employees, are Lender's partners, agents, or representatives, and have no right to commit, bind or obligate Lender in any way. I further understand and unconditionally agree that, except for the limited purpose of assisting in the completion of this Note, neither the Equipment seller nor its employees are Lender's partners, agents, or representatives, and have no right to commit, bind or obligate Lender in any way. **TO THE EXTENT PERMITTED BY APPLICABLE LAW, MY OBLIGATIONS TO LENDER UNDER THIS NOTE ARE IRREVOCABLE, ABSOLUTE, AND UNCONDITIONAL AND ARE TO BE PAID OR PERFORMED IN ACCORDANCE WITH THEIR TERMS WITH NO RIGHT OF OFFSET, COUNTERCLAIM OR DEFENSE AGAINST LENDER OR ANY ASSIGNEE, INCLUDING BUT NOT LIMITED TO ANY RIGHT OF OFFSET, COUNTERCLAIM OR DEFENSE ARISING FROM ANY EXPRESS OR IMPLIED WARRANTY RELATING TO THE EQUIPMENT INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**
13. **Representations and Warranties:** I represent and warrant to Lender that: (1) my correct legal name and state of residence or organization are listed on page 1 of this Note, and I am properly authorized, licensed and in good standing to conduct business in each applicable jurisdiction; (2) none of the preprinted provisions of this Note have been altered, modified, or stricken by me or by anyone else; (3) I or my authorized representative properly executed this Note in my name and my signature on this Note, or that of my authorized representative, is genuine; and (4) I have and intend to license, title, and register the Equipment in the proper state or jurisdiction.
14. **Power of Attorney:** To the extent permitted by law, I hereby appoint Lender as my attorney-in-fact. My grant of this power of attorney is coupled with an interest and is irrevocable until all obligations I owe under this Note are paid in full. As my attorney-in-fact, Lender can, in my name or Lender's name: (a) sign on my behalf all certificates of ownership, registration cards, financing statements, applications, affidavits or any other documents required to register and properly perfect Lender's security interest in the Collateral; (b) transfer my entire interest in the Collateral as part of a repossession and sale; (c) act on my behalf in insurance matters relating to the Collateral, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf and cancel any credit life, credit disability, guaranteed automotive protection coverage, extended warranty or other optional insurance financed under this Note and apply the refunded premium or cost to my outstanding balance if I am in default; and (d) make claims on my behalf under any such insurance policies related to the Collateral.
15. **Governing Law:** This Note shall be deemed received and accepted by Lender in Fort Worth, Texas on the date of funding. Furthermore this Note shall be governed and construed under the laws of the State of the Borrower's address at the time of execution of this Note, as indicated on Page 1, irrespective of the conflict of laws principles of that state.
16. **Miscellaneous:** In this Note, the words "I", "me", "my", "we", "us" and "our" individually, collectively and interchangeably mean each person or entity signing this Note as a Borrower, Co-Borrower or Guarantor, their successors and assigns, and all other persons that may be or become obligated under this Note. All schedules executed in connection with this Note are part of this Note. This Note and any such schedules constitute the entire Note between the parties. No modification or amendment of this Note shall be effective unless in writing signed by all parties. All provisions of this Note that are prohibited by applicable law shall be ineffective solely to the extent of such prohibition without invalidating the other provisions of this Note. Any waiver of Lender's rights and remedies under this Note shall be effective only if specifically agreed by Lender in writing. To the extent permitted by law, I give Lender permission to monitor and record any telephone conversation between Lender and me, including my representatives, service providers and agents.
17. **ACH Authorization:** From time to time I may contact Lender by telephone or otherwise to initiate single or reoccurring electronic debit entries to a specified business bank account held at the financial institution I designate through the Automated Clearing House (ACH) network. I hereby authorize Lender to initiate all such debit entries in the amount of my monthly payment or payments under the Note, plus all other amounts due at the time not exceeding $100.00 (or in such other amount as I specify from time to time) and agree to be bound by the rules and regulations of the National Automated Clearing House Association, as they may change from time to time, applicable thereto.
18. **Authorization to Share Information:** Lender may collect non-public information from Borrower and any Guarantor which may consist of information on credit applications or other forms, information regarding transactions with Lender, affiliates or others and information that Lender receives from credit reporting agencies and other outside sources during the time period that a line of credit is in effect or that any balance is due to Lender under any lease or loan agreement ("Information"). All Borrowers and Guarantors agree that Lender may disclose any of the Information to any affiliate, assigns or agents of Lender.

MBFF2508 (06/01/2011)

**Mercedes-Benz Financial Services**

**Dealer Agreement – Direct Loans**

LOAN AGREEMENT DATE: 11/13/2020
BORROWER: FAST FLOW PLUMBING, LLC

| 1095 Majaun Rd | Lexington | | KY | 405111185 |
|---|---|---|---|---|
| (Street No.) | (City) | (County) | (State) | (Zip) |

Description of Equipment: *See Property Schedule if 4 or more units*

| New/Used | Make | Model | Serial Number | Body Type | Model Year | Cash Sale Price | Titling Source |
|---|---|---|---|---|---|---|---|
| N | Mercedes-Benz | M2CAE6 | W1Y4ECHY0LT024800 | Van | 2019 | $51,826.00 | DEALER |
| | | | | | | | |
| | | | | | | | |

In consideration of and for Mercedes-Benz Financial Services USA LLC, and its successors, transferees and assigns ("Lender") making a direct loan (the "Loan") to the Borrower named above to purchase the described Equipment, the undersigned Dealer agrees as follows:

1. **Incorporation of Certain Provisions of Dealer's Retail Installment Contract and Lease Program Agreement by Reference.** By signing below, Dealer accepts the Loan Agreement subject to the terms and conditions of the Retail Installment Contract and Lease Program Agreement with or assigned to Mercedes-Benz Financial Services USA LLC and Dealer.

2. **Dealer's Refund Obligations.** In the event that the Borrower prepays the Loan in full prior to maturity, or if Lender accelerates payment of the Loan as a result of the Borrower's default, Dealer agrees to refund and to pay to Lender, immediately on demand, the then unearned amount of any credit life, credit disability and property insurance premiums paid with the proceeds from the Note that are required by law or by agreement to be rebated or refunded by Dealer to Borrower. Dealer agrees that Lender may set-off Dealer's refund obligations against any reserve account or accounts that Dealer may maintain with Lender, and/or against any credits or amounts that Lender may owe to Dealer either as a result of the funding of a separate loan to another borrower, or for any other reason.

3. **Dealer is Not Lender's Agent.** Neither this Agreement, nor any action taken by Dealer with respect to the Note, except for the limited purpose of assisting in the completion of the Note, shall be deemed to create a principal-agency relationship between Dealer and Lender, or to authorize Dealer, or Dealer's employees, to act as Lender's representative.

4. **Miscellaneous.** This Agreement is subject to the substantive laws of the State of Texas for all purposes irrespective of the conflict of laws principles of that state. This Agreement is binding upon the parties hereto and their respective successors and assigns. Should any provision of this Agreement be deemed to be unenforceable, that provision shall be deemed as stricken, with all other provisions of this Agreement remaining in full force and effect. Dealer agrees to pay Lender's reasonable attorney's fees incurred in enforcing Lender's rights against Dealer under this Agreement. BOTH DEALER AND LENDER WAIVE THE RIGHT TO A TRIAL BY JURY AS TO ALL MATTERS ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT.

Dealer has executed this Agreement as of this 13th day of November, 2020.

Dealer Name: LAGREW MOTORS, INC.
By (signature): X _____
Title: FINANCE MANAGER

Dealer Agreement – MBFF0041 (06/01/2011)

LAW 553-KY-ARB-ea 7/20

5002343582001

## RETAIL INSTALLMENT SALE CONTRACT - SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

0000111

DEAL#: 36013444
CUST#: 1757562

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| FAST FLOW PLUMBING LLC<br>1095 MAJUN RD<br>LEXINGTON KY 40511<br>COUNTY: FAYETTE | N/A | MERCEDES-BENZ OF FORT MITCHELL<br>2100 DIXIE HWY<br>FORT MITCHELL, KY 41011 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. **By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract.** You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| NEW | 2023 | MERCEDES-BENZ GLS450W4 | 4JGFF5KE1PA922100 | Personal, family, or household unless otherwise indicated below<br>[X] business<br>[ ] agricultural    [ ] N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 7.99 % | $ 32026.11 | $ 122220.21 | $ 154246.32 | $ 154246.32 |

**Returned Check Charge:** If any check or similar instrument you give us is returned unpaid, you agree to pay us a handling fee of up to $ 50.00 .

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 2142.31 | MONTHLY beginning 03/2023 |
| N/A | $ N/A | N/A |
|  |  | N/A |

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __15.00__ or __5__ % of the part of the payment that is late, whichever is greater.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

*Copy*

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term __72__ Mos.     ZURICH GAP
                     Name of Gap Contract

I want to buy a gap contract.
Buyer Signs X _[signed]_

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _[signed]_     Co-Buyer Signs X __N/A__

101856*1*MBFM-FI

02/03/2023  05:15 pm

LAW 553-KY-ARB-ea 7/20 v1    Page 1 of 5

DEAL#: 36013444

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including $ __3855.84__ sales tax) .............................................. $ __99320.84__ (1)

2. Total Downpayment =
   Trade-In __2023__    __RANGE ROVER__    __EVOQUE__
              (Year)         (Make)           (Model)

   | | |
   |---|---|
   | Gross Trade-In Allowance | $ 41000.00 |
   | Less Pay Off Made By Seller to LAND ROVER FINANCIAL | $ 52661.37 |
   | Equals Net Trade In | $ -11661.37 |
   | + Cash | $ N/A |
   | + Other N/A | $ N/A |
   | + Other N/A | $ N/A |
   | + Other N/A | $ N/A |

   (If total downpayment is negative, enter "0" and see 4I below) ............. $ __0.00__ (2)

3. Unpaid Balance of Cash Price (1 minus 2) .......................................... $ __99320.84__ (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):

   A. Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
      Life       $ N/A
      Disability $ N/A        $ N/A
   B. Vendor's Single Interest Insurance Paid to Insurance Company    $ N/A
   C. Other Optional Insurance Paid to Insurance Company or Companies $ N/A
   D. Optional Gap Contract                                            $ 999.00
   E. Official Fees Paid to Government Agencies
      to N/A    for N/A    $ N/A
      to N/A    for N/A    $ N/A
      to N/A    for N/A    $ N/A
   F. Government Taxes Not Included in Cash Price    $ N/A
   G. Government License and/or Registration Fees
      LICENSE FEE
      N/A                                            $ [illegible due to "Copy" watermark]
   H. Government Certificate of Title Fee            $ [illegible] .00
   I. Other Charges (Seller must identify who is paid and describe purpose)
      to LAND ROVER FINANCIAL    for Prior Credit or Lease Balance    $ 11661.37
      to MB OF FORT MTICHELL     for PROCESSING                       $ [illegible].00
      to MBUSA ELW               for SERVICE CONTRACT                 $ 45[illegible].00
      to MBUSA PPM               for MAINTENANCE PLAN                 $ 23[illegible].00
      to MBFS                    for MB FIRST CLASS WHEEL TIRE        $ 19[illegible].00
      to MBFS                    for DUPONT                           $ 899.00
      to N/A                     for N/A                              $ N/A
      to N/A                     for N/A                              $ N/A
      to N/A                     for N/A                              $ N/A
      to N/A                     for N/A                              $ N/A
      to N/A                     for N/A                              $ N/A
      to N/A                     for N/A                              $ N/A
      to N/A                     for N/A                              $ N/A

   Total Other Charges and Amounts Paid to Others on Your Behalf    $ 22899.37 (4)

5. Amount Financed (3 + 4)                                             $ 122220.21 (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____N/A_____, Year __N/A__. SELLER'S INITIALS _____N/A_____

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is** $ _____N/A_____ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

---

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is reasonably acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
**Optional Credit Insurance**
☐ Credit Life:       ☐ Buyer    ☐ Co-Buyer    ☐ Both
☐ Credit Disability: ☐ Buyer    ☐ Co-Buyer    ☐ Both
Premium:
Credit Life $ _____N/A_____
Credit Disability $ _____N/A_____
Insurance Company Name __N/A__
__N/A__
Home Office Address __N/A__
__N/A__

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance or credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ __N/A__                              __N/A__
   Type of Insurance                    Term
Premium $ __N/A__
Insurance Company Name __N/A__
__N/A__
Home Office Address __N/A__
__N/A__

☐ __N/A__                              __N/A__
   Type of Insurance                    Term
Premium $ __N/A__
Insurance Company Name __N/A__
__N/A__
Home Office Address __N/A__
__N/A__

Other optional insurance is not required to obtain credit. Your decision to buy or not to buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____N/A_____                    _____N/A_____
Buyer Signature                       Date

X _____N/A_____                    _____N/A_____
Co-Buyer Signature                    Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

---

101856*1*MBFM-FI

02/03/2023    05:15 pm    LAW 553-KY-ARB-ea 7/20 v1    Page 2 of 5

[COPY watermark across page]

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **You may refinance a balloon payment.** A balloon payment is a scheduled payment that is more than twice as large as the average of your earlier scheduled payments. If you are buying the vehicle primarily for personal, family, or household use, you may refinance the balloon payment when due without penalty. The terms of the refinancing will be no less favorable to you than the terms of this contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.
      If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1.
      Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      • You do not pay any payment on time;
      • You give false, incomplete, or misleading information during credit application;
      • You start a proceeding in bankruptcy or one is started against you or your property; or
      • You break any agreements in this contract.
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

Copy

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

7. **APPLICABLE LAW**
Federal law and the law of the state of Kentucky apply to this contract.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

**Copy**

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association (www.adr.org) or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs **X** _[signature]_   Co-Buyer Signs **X** **N/A**

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See the rest of this contract for other important agreements. This contract requires that a copy of it be furnished to you at the time the contract is executed.

**NOTICE TO RETAIL BUYER:** Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs **X** _[signature]_   Date **02/03/2023**   Co-Buyer Signs **X** **N/A**   Date **N/A**
Buyer Printed Name **FAST FLOW PLUMBING LLC**   Co-Buyer Printed Name **N/A**
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name **DONALD FITZPATRICK**   Title **MANAGING MEMBER**

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X** **N/A**   Address **N/A**
Seller signs **MERCEDES-BENZ OF FORT MITCHELL**   Date **02/03/2023**   By **X** _[signature]_   Title **FINACE MANAGER**

Seller assigns its interest in this contract to **MERCEDES BENZ FINSERVUSALLC**   (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   ☒ Assigned without recourse   ☐ Assigned with limited recourse
Seller **MERCEDES-BENZ OF FORT MITCHELL**
By **X** _[signature]_   Title **FINACE MANAGER**

LAW® FORM NO. 553-KY-ARB-ea (REV. 7/20)
©2020 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

101856*1*MBFM-FI

02/03/2023   05:15 pm
LAW 553-KY-ARB-ea 7/20 v1   Page 5 of 5

*[COPY watermark overlaid on page]*